**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JAMES BLAKNEY,

*Plaintiff*,

v.

MEDICAL TRANSPORTATION MANAGEMENT, INC., *et al.*,

*Defendants*.

No. 1:25-cv-4339-APM

**PLAINTIFF'S MOTION FOR CLARIFICATION OR RECONSIDERATION AND FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiff James Blakney, by his undersigned counsel, respectfully submits this Motion for Clarification or Reconsideration and for Leave to Amend the Complaint. Counsel for Mr. Blakney conferred with counsel for Defendant Medical Transportation Management, Inc., and Defendant opposes this Motion.

## INTRODUCTION

Mr. Blakney filed the instant case alleging claims under the D.C. Human Rights Act ("DCHRA") and D.C. wage and hour laws on December 15, 2025. On April 15, 2026, the Court granted Defendant Medical Transportation Management, Inc.'s ("MTM") Motion to Dismiss Count One, dismissing Mr. Blakney's claim under the DCHRA. Order, ECF No. 26. The Order does not specify whether the dismissal is with prejudice. *See id.* at 2; *see also* Plaintiff's Opposition ("MTD Opp."), ECF No. 19 at 14 (requesting leave to amend the Complaint in the event that MTM's Motion to Dismiss was granted).

To the extent the Court's dismissal was with prejudice, *see* Fed. R. Civ. P. 41(b), Mr. Blakney respectfully requests reconsideration of the ruling on the grounds that the dismissal should be without prejudice. To the extent the Court's dismissal was not with prejudice, Mr. Blakney requests clarification of the ruling to that effect.

Mr. Blakney further respectfully requests leave to amend the Complaint to comport with the Court's decision and to clarify his allegations that MTM's background check policy has a disparate impact upon Black individuals, like Mr. Blakney, seeking employment as MTM drivers.

## LEGAL STANDARD

"In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)). A motion to reconsider an interlocutory order is governed by Rule 54(b), which sets forth that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights . . . does not end the action to any of the claims . . . and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A Rule 54 motion is the appropriate tool to request reconsideration of dismissal of some claims with prejudice when there is otherwise no final judgment. *See Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-cv-1034, 2021 U.S. Dist. LEXIS 255215, at *7-8 (D.D.C. June 3, 2021).

A court "should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) should be "construed liberally." *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)).

Generally, a plaintiff should be permitted to amend his complaint, "unless there is a good reason to deny [him] that leave." *Branch v. Spencer*, No. 16-cv-1713, 2019 U.S. Dist. LEXIS 153939, at *22-23 (D.D.C. Sep. 10, 2019). Such reasons include "undue delay, bad faith or dilatory motive on the part of the movant, . . . [or] undue prejudice to the opposing party." *Belizan*, 434 F.3d at 582 (D.C. Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**ARGUMENT**

The Court should grant relief to Mr. Blakney on two independent but complementary grounds. First, to the extent the April 15 Order dismissed Count One with prejudice, that ruling should be reconsidered under Rule 54(b) as clear error. Under the governing standard in this Circuit, a dismissal with prejudice "is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quotations and citations omitted). Because the deficiencies the Court identified can be cured through additional factual allegations, Mr. Blakney requests that the Court reconsider its Order and dismiss Count One without prejudice. Second, the Court should grant leave to amend the complaint pursuant to Rule 15(a)(2). Courts in this Circuit must "'grant leave to amend liberally, especially when a complaint is [subject to] dismissal for pleading deficiencies.'" *Burman v. Phoenix Worldwide Industries, Inc.*, 384 F. Supp. 2d 316, 320 n.3 (D.D.C. 2005) (alteration in original) (quoting *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 106 (D.D.C. 2003)). Mr. Blakney's proposed First Amended Complaint cures the deficiencies the Court identified in its Order, no prejudice accrues to MTM at

this early stage, and justice requires that he be permitted to amend. *See* Ex. 1, First Amended Complaint ("FAC").

## I. The Court Should Reconsider the With-Prejudice Dismissal of Count One under Rule 54(b).

The Court dismissed Mr. Blakney's Complaint because the Complaint lacked sufficient allegations linking the statistics Mr. Blakney identified to support his disparate impact claim to the applicant pool for MTM driver positions, analogous to *Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020). *See* Order at 1-2. In his proposed First Amended Complaint, Mr. Blakney has pleaded additional allegations demonstrating that the criminal history statistics alleged in the Complaint are plausibly reflective of the demographics of MTM's driver applicant pool and workforce, which would "cure the deficiency," *Firestone*, 76 F.3d at 1209, identified by the Court. Therefore, the Court should reconsider or clarify its Order to dismiss Count One without prejudice.

"A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Id.* at 1209-11 (finding abuse of discretion, on Rule 59(e) motion, where court dismissed complaint in its entirety with prejudice on statute of limitations grounds and for failure to plead fraud with particularity) (emphasis in original) (quotations and citations omitted); *see also Brink v. Continental Ins. Co.*, 787 F.3d 1120, 1128-29 (D.C. Cir. 2015) (noting standard is a "high bar"). This "permissive standard for reconsidering a judgment based on newly alleged facts applies even to complaints that have been dismissed for failing to state a plausible claim," as "when a plaintiff adduces facts that would cure the deficiencies in a complaint that has been dismissed with prejudice, leave to amend is required because the original dismissal with prejudice was *a fortiori* 'erroneous.'" *Bernier v. Allen*, No. 16-cv-828, 2020 U.S. Dist. LEXIS 126722, at *8-9 (D.D.C. July 20, 2020) (quoting *Brink*, 787 F.3d at 1128). This framework is particularly appropriate

"because 'the standard for review of interlocutory decisions is *more permissive* than that applied to motions for reconsideration under Federal Rules of Civil Procedure 59(e) or 60(b).'" *Ronaldson*, 2021 U.S. Dist. LEXIS 255215 at *8 (quoting *Attias v. CareFirst, Inc.*, No. 15-cv-882, 2021 U.S. Dist. LEXIS 17336 (D.D.C. Jan. 29, 2021)) (emphasis in original).

Here, Mr. Blakney can more than adequately supplement his statistical allegations to comport with the Court's order, such that a dismissal with prejudice is not warranted. The Court concluded that Mr. Blakney relied on statistics showing Black individuals are disproportionately arrested and incarcerated without allegations demonstrating that those disparities also exist in MTM's workforce or pool of qualified applicants as a result of MTM's policy, drawing from the Second Circuit's holding in *Mandala*. Order at 2. In *Mandala*, two plaintiffs brought claims for race discrimination on a disparate impact theory after the defendant withdrew its offers for positions as an "Application Software Development Senior Principal Consultant" and a "web developer" following background checks that uncovered felony convictions. 975 at 205-06. In support of their assertion that the company's criminal record policy had a disparate impact upon Black individuals in its workforce, the plaintiffs relied solely on national statistics demonstrating racial disparities in arrest and incarceration rates. *Id.* at 206. The court found these national statistics insufficient because "[g]eneral population statistics are a reliable surrogate [for the qualified population in the relevant labor market] only when there is reason to think that they accurately reflect the pool of qualified job applicants for the position in question" and plaintiffs adduced no "allegations to demonstrate that national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at NTT." *Id.* at 210-11 (quotations omitted). The positions at issue required "educational or technical experience that is not shared by the general population," so national statistics were unlikely to reflect the pool of

qualified applicants, because "'[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value.'" *Id.* at 211-12 (alteration in original) (quoting *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977)).

Mr. Blakney can amend the complaint to show that the qualification necessary to become an MTM driver does not significantly narrow the applicant pool. Applying *Mandala*, the positions at issue have no "educational or technical" requirements weeding out potential applicants: the only licensing qualification is having an ordinary driver's license.[1] *See* Complaint ("Compl.") ECF 1 ¶ 41; *see also* MTD Opp. at 2. Mr. Blakney can plead additional allegations about the population of adults in DC, Virginia, and Maryland that have drivers' licenses, which demonstrate that most adults in these areas have drivers' licenses. *See* FAC ¶¶ 44-49. Accordingly, the FAC accounts for the licensing requirement's impact on the relevant population, per *Mandala*, and shows that it does not result in a pool of qualified applicants significantly different from the population at large.

Mr. Blakney can also allege additional local criminal history data and additional facts to clarify why data from the local area is a satisfactory proxy for the MTM driver workforce and applicant pool. *See* FAC at ¶¶ 35-41, 45. The nature of the driver position at issue *requires* workers to be drawn from the area in and around the District, because they are driving non-emergency medical transportation ("NEMT") clients around DC. It is therefore a reasonable inference that most of MTM's DC NEMT drivers will be DC residents like Mr. Blakney, or residents of Maryland or Virginia, and so statistics particular to this area describe the pool of applicants from which MTM

[1] MTM argues in its reply in support of its motion to dismiss that drivers also have to meet "credentialing requirements," like first aid, but these are trainings drivers receive in the course of employment and are not relevant to this analysis. ECF 20 at 9; *see also* Compl. ¶ 20 (MTM provided Mr. Blakney with trainings).

draws drivers. *Cf. Mandala*, 975 F.3d at 216 (one plaintiff lived in Rochester, New York, and the other lived in Frankfort, Kentucky; both relied on general national statistics) (Chin, J. dissenting). Mr. Blakney is relying on statistics describing the local population that would actually be able to work as MTM drivers: here, there is "reason to think that [these statistics] accurately reflect the pool of qualified job applicants for the position in question." *Id.* at 211 (quotations omitted). He also includes more granular statistics showing that Black individuals are disproportionately arrested and incarcerated in the DC area, significant racial disparities exist among individuals arrested for crimes of violence (as Mr. Blakney was) in DC and Virginia,[2] and these racial disparities persist across income levels. *See* FAC ¶¶ 37-40, 50.

Finally, Mr. Blakney can plead additional allegations that local racial disparities in criminal records and the minimal qualifications for MTM NEMT drivers interact such that MTM's criminal record policy disproportionately disqualifies Black drivers. FAC ¶ 51. Black people in the DC region, who are otherwise qualified and geographically positioned to be MTM drivers, are more likely to have arrest and conviction records and are accordingly disproportionately disqualified under MTM's policy. Mr. Blakney's statistical evidence is relevant and proportional to his claims and his claims are geographically circumscribed and particular to the subset of MTM's workforce performing NEMT driver services in DC at issue; he therefore more than satisfies *Mandala*'s prohibition on "conclusory statistical inferences" from national statistics. 975 F.3d at 212.

Before engaging in discovery, Mr. Blakney does not have access to the data necessary to precisely calculate statistical disparities—only Defendant MTM has access that information.[3]

---

[2] This data is not available for Maryland. FAC ¶ 38 n.24.

[3] Contrary to MTM's suggestion, *see* ECF No. 20 at 3-4 n.1, co-counsel's separate representation of a class of drivers bringing wage theft claims from 2014-2024 does not give co-counsel access to racial or criminal history data of these drivers. More importantly, it is not necessarily the racial makeup of the current workforce that is critical, but the racial disparities in those who are or would

Once Mr. Blakney is permitted discovery, he will develop more tailored statistical evidence to present in support of his disparate impact claim. However, Mr. Blakney pleads additional allegations in his proposed First Amended Complaint that will cure his Complaint's earlier deficiencies: these allegations plausibly link local statistics about criminal histories to the composition of the likely qualified labor pool for MTM's workforce. At the pleading stage, nothing more is required. MTD Opp. at 7-10. Indeed, even at the summary judgment and trial phases, the use of data probative of the impact on the "qualified labor pool in question" in lieu of actual applicant data is appropriate. *Mandala*, 975 F.3d at 210 (citing *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003)); *see also Dothard v. Rawlinson*, 433 U.S. 321, 330 (1977) ("There is no requirement . . . that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants. The application process itself might not adequately reflect the actual applicant pool, since otherwise qualified people might be discouraged from applying because of a self-recognized inability to meet the very standards challenged as being discriminatory.") (citation omitted).

## II. The Court Should Grant Leave to Amend under Rule 15(a)(2).

The same reasoning that compels reconsideration of the with-prejudice designation also requires that leave to amend be granted. If, as demonstrated above, the deficiencies identified in the Court's Order could "possibly [be] cure[d]" by the "allegation of other facts consistent with the challenged pleading," *Firestone*, 76 F.3d at 1209, then it follows that the proposed First Amended Complaint — which alleges precisely those curative facts — satisfies the liberal standard

---

be *denied* employment under the policy. *See Connecticut v. Teal*, 457 U.S. 440, 450-51 (1982) (employer's argument that its workforce was racially balanced was no defense to disparate impact claim regarding exam that disproportionately disqualified Black applicants).

for amendment under Rule 15(a)(2). Put differently, the Court's own analysis confirms that amendment is not futile, and where amendment is not futile and no other *Foman* factor weighs against it, leave must be freely given.

Here, there has been no undue delay, bad faith, or undue prejudice to MTM. *See Foman*, 371 U.S. at 182. Mr. Blakney has moved quickly to make the necessary amendments to comport with the standard set forth in the Court's Order. MTM would not be prejudiced, as discovery has not even begun in this case. There is no surprise or injustice to MTM in permitting Mr. Blakney to amend his Complaint, and, on the other side of the scale, Mr. Blakney would face dismissal of a valid claim if leave to amend is denied.

**CONCLUSION**

For the foregoing reasons, the Court should allow Mr. Blakney to file the attached First Amended Complaint remedying the deficiencies identified in the Court's April 15 Order.

Dated: May 13, 2026

Respectfully submitted,

*/s/ Sarah L. Bessell*
Sarah L. Bessell (Bar No. 219254)
sarah_bessell@washlaw.org
Madeleine Gates (Bar No. 90024645)
madeleine_gates@washlaw.org
Washington Lawyers Committee for Civil Rights and Urban Affairs
700 14th St NW Suite 400
Washington, D.C. 20005
Phone: (202) 319-1000

Harini Srinivasan (Bar No. 1032002)
hsrinivasan@cohenmilstein.com
Megan Reif (Bar No. 252626)
mreif@cohenmilstein.com
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW Suite 800

Washington, D.C. 20005
Phone: (202) 408-4600

*Attorneys for Plaintiff*